UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) CAUSE NO. CR08-423JLR |
| Plaintiff, | ) |
| | ) |
| V. | ) DEFENDANT'S SENTENCING |
| | ) MEMORANDUM |
| ANTHONY CURCIO | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## I.     INTRODUCTION.

Anthony Curcio, by and through his attorneys, submits this Sentencing Memorandum for his conviction by guilty plea to one count of Interference with Commerce.  The defense and prosecution are both requesting that the Court impose a sentence of sixty months imprisonment.

## II.     PERSONAL HISTORY

Anthony Curcio is 28 years of age.  He has been married to Emily Curcio for five years and is the father of two young children, Isabella, almost 3, and Lyla, who is nearing her first

DEFENDANT'S SENTENCING MEMORANDUM- **1**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

birthday.  Anthony is the youngest of three children born to Jay and Geri Curcio.  Appended to this memorandum are letters from Mr. Curcio's family and friends.  The sheer volume of letters speaks to the strong connections Anthony has had throughout his life.  The letters from those who know him best, in particular his wife Emily, also provide an insight into the struggles Anthony has had that remained hidden from many who knew him growing up.

Also appended to this memorandum is a report from Dr. Gareth Lasky, Ph.D.  Dr. Lasky is the former director of the Residential Drug Treatment Program (RDAP) at the Federal Correctional facility at Sheridan, Oregon.  Dr. Lasky's report provides insight into the personal issues, including drug addiction and depression, that have played a significant role in how Anthony Curcio came to be before this Court.  Dr. Lasky also addresses how Anthony can benefit from the RDAP program and it's focus on addressing "an inmate's irrational belief systems and associated misbehavior."

Anthony Curcio grew up in what is by all accounts an ideal environment.  Loving parents provided him with material comfort and support.  He excelled at athletics, starring as the captain of the football team his senior year and earning a place on the team at his father's alma mater, the University of Idaho.  His popularity appears to have been equal amongst his peers, teachers, coaches, and parents of other students.  To call who he was at age 18 the "All-American Boy" would be both cliche, and astonishingly accurate.

Anthony's seemingly fairy tale life was, unfortunately, just that, a fairy tale.  His outward success masked an inner uncertainty and low self-esteem.  It was a profound uncertainty brought about by an addiction to alcohol and drugs that ran deeper and for a longer time than he ever let be known.  When the outward success that sports had brought him was

DEFENDANT'S SENTENCING MEMORANDUM- **2**

lost to injury, and then drug abuse, there was nothing there to take its place in masking his uncertainty. Nothing except drugs and money (or the pursuit of money).

Anthony did attend college and earn a degree from Washington State University in 2004. He married his high school sweetheart, Emily, and began building his own business, looking to profit in the real estate market. His parents were extraordinarily successful business owners and, just as he had excelled in sports, so it was expected he would excel in business. But as Anthony proceeded to check off the milestones that were expected of him - graduation, marriage, kids, bread winner - he was just hiding a life that was out of control.

Anthony's drug addiction has the familiar story of short stints at rehabilitation programs, followed by eventual relapse. As that struggle took place, however, Anthony pressed ahead with attempting to become the success he believed everyone expected him to be. As his wife recounts in her letter, instead of just the usual "big dreams" Anthony's plans for the future became "unrealistic and grandiose." He was "all over the place and irrational." His behavior was a manifestation of not just a drug addiction, but underlying psychological and emotional issues.

In 2008, Anthony's life was on a course of total failure. The real estate market fell apart. His wife became pregnant with their second child. His drug use expanded away from just prescription drugs to the use of Cocaine on a daily basis. Foreclosure, bankruptcy, divorce - all terms that were foreign to his parents and family, were fast becoming a very real consequence of the way he had been living.

The manner in which Anthony chose to attempt to rectify his situation - the offense in this case- may be the clearest evidence we have that Anthony's chemical dependency and

DEFENDANT'S SENTENCING MEMORANDUM- **3**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

psychological difficulties had stripped him of any semblance of judgment and rational decision-making.  He was at a point in his life where the most likely outcome would have been his death, either by overdose or suicide.  Fortunately for Anthony, his daughters, and those who care about him, he is instead before this Court for sentencing.

The story of Anthony's personal history has to include the time he has spent in custody since January of this year.  Simultaneously he was forced into sobriety and placed under the care of mental health professionals.  He began communicating honestly with both his family and himself.  Not only has he accepted responsibility for his actions, but he has come to see clearly how his actions impacted the world around him.  He has come to realize that the end of this story, had he not been arrested, would not have been the sweeping erasure of all the problems in his life, but instead the eventual end of that life in relatively short order.

As part of the materials provided by Emily Curcio for the Court to review are three illustrated children's stories which Anthony has created during his time in custody.  Those are appended separately to this report.  They have been provided to the Court in order to provide some concrete evidence that within this defendant there is warmth, intelligence, and a deep affection for his children.  They hopefully will help the Court to see that the effusive praise in the letters from family and friends for who Anthony once was as a person is not a case of people being misled about who he really is, but proof of how drug use and mental health problems can so completely derail someone from who they are at their core.

The letters the Court has received tell about the young Anthony who stood up for the classmate being bullied.  Anthony the cousin who provided the friendship and guidance of an older sibling.  The humble athlete staying after the game to talk to the kids for whom he is a

DEFENDANT'S SENTENCING MEMORANDUM- 4

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

real-life superhero.  That is the core of Anthony Curcio, and it has revealed itself again while he has been incarcerated.  He has accepted responsibility for his actions, and committed himself to doing the hard work to change so he can be a productive father and citizen

### III.    GUIDELINE CALCULATIONS

The calculation of the offense level pursuant to the United State s Sentencing Guidelines (hereinafter "the Guidelines") is accurately reflected in the Plea Agreement.

The base offense level is 20.  U.S.S.G. § 2B3.1.   There is a 2 level increase because the property of a financial institution was taken.[1]  U.S.S.G. § 2B3.1(b)(1). There is also a  3 level increase based upon the amount of loss being over $250,000.[2]   U.S.S.G. § 2B3.1(b)(7)) .  There is also a two-level increase based upon Mr. Curcio's role in the offense.  U.S.S.G. §

---

[1] While the money taken was the property of Bank of America, the company transporting the money, Brinks, guaranteed its safe delivery. This meant Brinks was responsible for reimbursing Bank of America for the $400,000.  This is why Brinks is identified as the recipient of restitution in the case, not Bank of America.

[2] As noted in the Probation Report, $234,684, of the money stolen was recovered.  Thus while the "loss" at the time of the offense was more than $250,000, the final actual loss was $165, 276. The Government has information as to the recipients of $80,000 of stolen money, including $50,000 received by Jeff Johnson, an unindicted co-conspirator who knew it was proceeds from the crime.  If recovery can be made from those two individuals, the resulting outstanding loss will be approximately $85,000.  The defense will ask the Court to provide in any restitution order that any recovered monies be credited against the balance.

DEFENDANT'S SENTENCING MEMORANDUM- 5

3B1.1.  The Government, U.S. Probation, and the defense are all telling the Court that Mr. Curcio should receive the 3 level reduction for acceptance of responsibility.  The end result is an Offense Level 24, which gives an advisory Guideline Range of 51-63 months.

The Probation Report's addition of a two level increase for Obstruction of Justice is not well taken and, because of the failure to follow the procedures in Federal Rule of Criminal Procedure 32 by only including it in the final report, and not the draft, it should be stricken from the report.

The Draft Presentence Report submitted to the parties did not include this adjustment.[3] Submitting this two level adjustment only in its final report submitted to the Court undermines the entire procedure outlined in Criminal Rule 32(e) for giving the defendant notice and an opportunity to object.  In addition, when the facts cited to support that adjustment are examined, application of that enhancement would be in error. It must be noted that the Government, who is in the best position to evaluate whether their investigation was obstructed, has not included this adjustment in their recommendation to the Court.

The conduct cited by U.S. Probation to support the two-level increase for Obstruction of Justice is based solely upon a communication between Mr. Curcio and an unindicted co-conspirator, Jeff Johnson.  The Probation Report is misleading about who Mr. Johnson was, calling him "a friend of [Curcio'] who allowed Mr. Curcio to store some illegal funds at his place of business."  Probation Report p. 6.  As the Government is well aware, Mr. Johnson

---

[3] The addition of this two level enhancement came at the same time Probation conceded that the provision in the Draft report of a two level increase for "Bodily Injury" should be removed.

DEFENDANT'S SENTENCING MEMORANDUM- **6**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

assisted with the offense in this case both in the planning stages and after the offense.

Mr. Curcio's communication with Mr. Johnson, as the Probation Report notes, discusses his intentions to reach a plea agreement.  It talks about how, if he can provide the location of the stolen money, it will help get a better deal.  The letter is clearly an attempt to retrieve the stolen money in order to return it to the Government as part of a plea agreement.  As the Probation Report notes, the Government was looking for the money - or at least that is what was being communicated to Mr. Curcio and his counsel.  It was made clear by the Government in negotiations that if Mr. Curcio could provide the location of the money, that would make for more fruitful negotiations.

Mr. Curcio's way of dealing with the situation was stupid.  It was not, however, an attempt to obstruct the investigation.  It does not constitute "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror directly or indirectly, or attempting to do so..."  U.S.S.G. § 3C1.1.

**IV.    PROBATION RECOMMENDATION**

U.S. Probation is recommending a 72 month sentence, followed by three years of supervised release.  That sentence of imprisonment would constitute a departure from the properly applicable Guideline range.  When all of the factors in 18 U.S.C. § 3553 are taken into account, it is a sentence that would be too lengthy to accomplish a just result.

U.S. Probation is also asking the Court to impose a special condition of supervised release that would prohibit Mr. Curcio from being self-employed or being employed by "friends, relatives, associates or persons previously known to the defendant."  Such a

DEFENDANT'S SENTENCING MEMORANDUM- **7**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

condition is unwarranted and has no rational relation to the offense in this case and the goals of rehabilitation that supervised release should be working towards.

To limit his employment options in this way just sets him up to fail.  It is extremely difficult to find a job when you are a convicted felon.  This condition would only make that effort nearly impossible, and without any good reason.  The fact that he was once employed by his parents and abused their trust does not mean he should be foreclosed from being employed by people who know him (or have known him). The very people who will know about his past, his drug problem, and this offense.  The defense ask that the Court therefore strike that provision.

**V.      THE GOVERNMENT'S RECOMMENDATION**

The Government is recommending that the Court find the offense level in this case to be Level 24, with a resulting Guideline Range of 51-63 months.  The Government is urging the Court to sentence Mr. Curcio to 60 months imprisonment.

**VI.      BASIS FOR REQUESTED SENTENCE**

"The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth [in 18 U.S.C. § 3553(a)(2).]"  Those "purposes" can be complied with by sentencing Mr. Curcio to 60 months in federal prison.

If Mr. Curcio had been prosecuted in state court, he would have faced a standard sentencing range of 31-41 months in prison for the crime of First Degree Robbery.  See RCW 9.94A.500-.525.  The sentence recommended by the parties in this case is significantly higher. It is high enough to send a signal to anyone in Mr. Curcio's position that the place to look for

DEFENDANT'S SENTENCING MEMORANDUM- **8**

guidance as to what punishment you would face is not state law, but federal law.  It will deter others and, quite obviously, deter Mr. Curcio from any such conduct in the future.  By the same token, the length of the recommended sentence also "reflects the seriousness of the offense" and provides "just punishment for the offense."  18 U.S.C. § 3553(a)(2).  This is particularly true in a case involving a first-time offender serving prison time.

The sentence also is the "most effective manner" to "provide the defendant with...needed correctional treatment."  Id.  Everyone involved in this case agrees Mr. Curcio is in need of long-term intensive chemical dependency treatment.  The RDAP program administered by the Bureau of Prisons is the ideal for someone like Mr. Curcio.  So the Court is aware, because of the nature of the offense, Mr. Curcio will not be eligible to have his sentence reduced by participating in the RDAP program.

By the rules set by BOP, Mr. Curcio will also not be able to start the RDAP program until 30 months remain in his sentence.  He will be able to avail himself of other programs for counseling and drug addiction, but not the highly structured, and highly effective, Residential Program.  A sentence of 60 months provides a significant period of time to serve before becoming eligible to enter RDAP.  It is not so long, however, that the effectiveness of the RDAP program would be lost.  As Dr. Lasky notes in his report, "[Anthony] would benefit from admission into RDAP as soon as possible."

Mr. Curcio is an individual deserving of punishment, and he accepts that fact.  He is also an individual who can be a productive citizen and responsible father to his children.  From his letter to the Court and all of the information provided by those who know him best,

DEFENDANT'S SENTENCING MEMORANDUM- **9**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

it is clear that he is prepared to accept his punishment, but also ready to work on the problems that turned an All-American life into a sad cautionary tale.  He feels lucky to be alive, and fortunate to have family and friends who continue to stand by him and offer their support to help work on all of the issues that led him to the conduct in this case.  His remorse is genuine, and his amenability to rehabilitation makes the recommended 60 month sentence appropriate.

**VI.    CONCLUSION**

The defense respectfully requests that the Court impose a sentence of 60 months incarceration and recommend that the sentence be served at the BOP facility in Sheriden, OR.

DATED this 21st day of July, 2009.

Respectfully submitted,

COHEN & IARIA

s/ Jeffrey L. Kradel
WSBA #26767
Cohen & Iaria
108 Western Ave., Ste 302
Seattle, WA 98101
Phone: 206-624-9694
Fax: 206-624-9691
Email: jlk@cohen-iaria.com

DEFENDANT'S SENTENCING MEMORANDUM- **10**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Bruce Miyake.  Additionally, as this document has been filed under seal, a copy will be provided to Bruce Miyake and the Probation Office directly.

s/Jeffrey L. Kradel_____

Jeffrey L. Kradel

DATED this 21st day of July, 2009.

s/Jeffrey L. Kradel _____

Jeffrey L. Kradel

DEFENDANT'S SENTENCING MEMORANDUM- 11

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694

DEFENDANT'S SENTENCING MEMORANDUM- **12**

COHEN & IARIA
National Building, Suite 302
1008 Western Avenue
Seattle, Washington 98104
206-624-9694